IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **RAFAEL FIGUEIREDO** and **DALE KARDASZ**, on behalf of themselves and a Class of individuals similarly situated, Plaintiff, v. **WAL-MART STORES, INC.** Serve: Registered Agent CT Corporation System 120 So. Central Avenue Clayton, MO 63105 Defendant. | Cause No.: Div. No: **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Plaintiffs, Rafael Figueiredo and Dale Kardasz, by and through counsel, and on behalf of themselves and a Class of other individuals similarly situated, files this Class Action Complaint against Defendant under the provisions of the Missouri Merchandising Practices Act.

### PARTIES

1. Plaintiffs Rafael Figueiredo and Dale Kardasz are both citizens of Missouri and residents of St. Louis County, Missouri.

2. Defendant Wal-Mart Stores, Inc. is a Delaware corporation with its principal place of business in Arkansas, and is a citizen of Delaware and Arkansas.

### JURISDICTION

3. Defendant is subject to *in personam* jurisdiction in Missouri because Defendant regularly and systematically conducts business in the State of Missouri, and has stores for the transaction of its business in Missouri.

4. Defendant is subject to subject matter jurisdiction in this court under the Class Action Fairness Act ("CAFA"), *28 U.S.C. Sec. 1332(d)* because:

(a) all members of the proposed Plaintiff Class, including the named Plaintiffs, are citizens of Missouri, and Defendant is a citizen of Delaware and Arkansas;

(b) the amount in controversy in this class action, when the claims of all class members are aggregated, exceeds $5,000,000;

(c) there are no Defendants who are citizens of Missouri.

## VENUE

5. Venue is appropriate in this District because the Plaintiffs purchased the allegedly fraudulently labeled, misbranded, and adulterated herbal dietary supplements in St. Louis County, Missouri at Defendant's Stores located in St. Louis County, which is within the Eastern District of Missouri.  *28 U.S.C. 105(a).*

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

6. This case concerns the fraudulent sale, advertisement, distribution, mislabeling, misbranding, and adulteration of certain herbal dietary supplements under the Wal-Mart trademarked name "Spring Valley," which were fraudulently labeled and advertised as including certain primary ingredients which, in fact, were not included within the Spring Valley product purchased.   For example, Defendant sold the herbal supplement labeled Ginseng, when in fact there was no ginseng whatsoever contained within the product.

7.  For at least the last four years, and continuing to the present day, Defendant Wal-Mart Stores, Inc. ("Wal-Mart") has sold to Missouri customers, and continues to sell to Missouri customers, bottles of pill capsules containing certain herbal dietary supplements under the trademarked name "Spring Valley."  These include the following:

(a)  Ginkgo Biloba (Wal-Mart advertises on the label that this supplement provides "memory support");

(b) Saw Palmetto Extract (Wal-Mart advertises on the label that this supplement assists "prostate health");

(c) St. John's Wort (Wal-Mart advertises on the label that this supplement supports "mood health");

(d) Korean Panax Ginseng (Wal-Mart advertises that this supplement supports "general wellness");

(e) Echinacea (Wal-Mart advertises on the label that this supplement supports "immune health");

(f) Garlic (Wal-mart advertises on the label that this supplement supports "heart health")

(g) Valerian Root (Wal-Mart advertises on the label that this supplement provides "sleep support");

9.  The "Supplement Facts" listed on the labels for each of these products state that the product contains the primary ingredient listed on the front of the label.  For example:

--the product Ginkgo Biloba is said to contain 120 mg of "Ginkgo Biloba Extract;"

--the product Korean Panax Ginseng is said to contain 100 mg of "Korean Ginseng Extract;"

--the product Saw Palmetto is said to contain 160 mg of "Saw Palmetto Extract;"

--the product Echinacea is said to contain 760 mg of "Echinacea;"

--the product St. John's Wort is said to contain 300 mg of "St. John's Wort Extract;"

--the product Valerian Root is said to contain 400 mg of "Valerian Root 4:1 Extract" and 100 mg of "Valerian Root."

10.  Despite claiming that these primary ingredients were contained within the bottles, however, Wal-Mart has fraudulently sold to the public capsules which did not contain their primary

ingredient, and which included substituted ingredients, products, adulterations, contaminants and fillers.

11.  These substitutions, adulterations, contaminants, and fillers include such products as oryza (rice), glycine max (soybeans), "triticum spp.," (wheat), spruce, asparagaceae (asparagus family), pinus strobus (eastern white pine), ranunculacae (buttercup family), dracaena (tropical houseplant), spruce, primrose, and citrus.  Sometimes, the bottles of dietary herbal supplement capsules sold by Wal-Mart contained no identifiable plant/botanical products whatsoever.

12.  In October 2013, researchers in Ontario Canada released a report finding that nearly all of the companies selling herbal dietary supplements in North America had included within their bottles substitutions, adulterations, contaminants and fillers.  The researchers found that more than half of samples tested contained ingredients not on the label, and that 68% contained product substitutions. See Center for Biodiversity Genomics, University of Guelph, "DNA Barcoding detects contaminants and substitutions in North American herbal products," *BMC Medicine* 2013, 11:22.

 13.  The results of this study were provided to Wal-Mart and the other sellers of North American herbal dietary supplements, but Wal-Mart did nothing.

14.  On February 2, 2015, the New York Attorney General sent a Cease and Desist letter to Wal-Mart, advising of the results of an investigation by the AG into Wal-Mart's fraudulent sale of these herbal dietary supplements.

15.  The New York Attorney General's representatives purchased six dietary herbal supplements (Ginkgo Biloba, Ginseng, Garlic, St. John's Wort, Echinacea, and Saw Palmetto) from three different New York stores (producing a total of 18 bottles), and took five samples from each

bottle, rendering a total of 90 samples.  These 90 samples were then "DNA Barcode Tested" by an independent lab.

16.  "DNA Barcoding" is a technique for characterizing species of organisms using a short DNA sequence from a standard and agreed-upon position in the genome. DNA barcode sequences are very short relative to the entire genome and they can be obtained reasonably quickly and cheaply tracking certain DNA sequences.

17.   Most of the samples failed to contain their primary ingredient, and all contained fillers and contaminants nowhere listed on the labels

18.  For example, the samples from the Wal-Mart bottles which were falsely labeled Ginkgo Biloba contained no Ginkgo Biloba DNA at all.  Six out of 15 samples contained oryza (rice) DNA, and other tests revealed the presence of DNA from the tropical houseplant dracaena, mustard, wheat and radish.  Four of the 15 tests revealed no botanical DNA at all.

19.  Samples from the Wal-Mart bottles which were falsely labeled St. John's Wort contained no St. John's Wort DNA at all. Four of the 15 samples failed to identify any botanical DNA.  Other DNA found included allium (garlic, onions), oryza (rice), and cassava (a/k/a Brazilian arrowroot), ingredients which were found nowhere on the label.

20.  Samples from the Wal-Mart bottles which were falsely labeled Korean Panax Ginseng contained no ginseng DNA at all. The DNA found was oryza (rice), dracaena (tropical houseplant), pinus strobus (eastern white pine), wheat grass and citrus, ingredients which were found nowhere on the label.  Ten of the 15 tests revealed no botanical DNA at all.

21.  Samples from the Wal-mart bottles which were falsely labeled Echinacea contained no echinacea DNA at all.  None of the samples contained any botanical DNA.

22. With regard to the samples from the Wal-Mart bottles which were labeled Saw Palmetto, 3 out of 15 (20%) showed the presence of some Saw Palmetto DNA, but it did not predominate. Four of the 15 showed no botanical DNA.  Three samples showed allium (garlic, onions) DNA. Six of the 15 (40%) contained oryza (rice) DNA.

23. With regard to the samples from Wal-Mart bottles which were labeled Garlic, 1 of the 15 samples had any allium DNA, and it did not predominate.  Ten of the 15 (67%) had no botanical DNA.  The rest of the samples contained oryza, pinus spp., palm, dracaena, and wheat.

24. Similar Cease and Desist letters were sent by the New York Attorney General to other dietary herbal supplement distributors, such as GNC, Target Corporation, and Walgreen Co., whose dietary herbal were also found to lack the primary ingredient, and to contain substitutions, adulterations, contaminants, and fillers found nowhere on the package label.

25. Other distributors, like Target Corporation and Walgreen Co., after receiving the results from the New York Attorney General's investigation, immediately recalled some of their dietary herbal supplements and took them off the shelves in their stores nationwide.  Wal-Mart, in contrast, continues to sell the fraudulently labeled and advertised dietary herbal supplements.

26. For at least the last four years, Plaintiff Rafael Figueiredo regularly purchased herbal dietary supplement capsules, including Ginkgo Biloba, Korean Panax Ginseng, Garlic, St. John's Wort, and others from Wal-Mart.  For at least the last four years, Plaintiff Dale Kardasz regularly purchased herbal dietary capsules, including Echinacae, from Wal-Mart.

27. Plaintiffs Figueiredo and Kardasz, like the other members of the Class, were defrauded out of their money because the products they purchased were mislabeled, misbranded, and adulterated, and failed to contain the essential ingredients they wished to purchase.

28.  As a result of the Ontario study and the New York investigation, it is clear that this problem with Wal-Mart dietary herbal supplements failing to contain their essential advertised ingredient, and containing substitutions, adulterations, contaminations, and fillers, is widespread and applies across Missouri and nationwide.

29.  Plaintiffs and other Class members purchased the Wal-Mart Spring Valley products because they were supposed to contain the ingredients advertised--the ingredients which were listed on the label.  Someone intending to buy Ginkgo Biloba, for example, is defrauded if there is no Ginkgo Biloba in the bottle, and the bottle contains rice and other unknown fillers.

30.  Defendant Wal-Mart knew or should have known that for the last four years they have been selling to Missouri customers and the general public Spring Valley products which were not as advertised, which did not contain the products listed on the labels, and which contained instead substitutions, adulterations, contaminations, and fillers.

31.  In fact, Wal-Mart advertised on the label that it used "strict quality guidelines," when in fact, that was not the case.

## CLASS ACTION ALLEGATIONS

32.   Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 on their own behalf and on behalf of a Missouri Class defined as:

> All residents of the State of Missouri who, at any time between February 6, 2011 and the date of trial, purchased any of the following Spring Valley dietary herbal supplements from a Wal-Mart store in Missouri, or who ordered any of the following Spring Valley dietary herbal supplements online and had them shipped to a Missouri address:
>
> (a) Spring Valley Ginkgo Biloba;
> (b) Spring Valley Ginseng or Korean Panax Ginseng;
> (c) Spring Valley St. John's Wort;
> (d) Spring Valley Echinacea;
> (e) Spring Valley Garlic;
> (f)  Spring Valley Saw Palmetto.

33. Excluded from the Class are affiliates, predecessors, successors, officers, directors, agents, servants, or employees of Wal-Mart, and the immediate family members of such persons. Also excluded is any trial judge who may preside over this action, court personnel and their family members, and any juror assigned to this action.

34. Plaintiffs are both members of the Class which they seek to represent.

35. The Class consists of millions of individuals and/or entities and therefore is so numerous that joinder is impracticable.

36. Plaintiffs' claims are typical of the claims of the Class because Plaintiffs and the members of the Class have sustained damage as a result of Wal-mart's fraudulent advertising, selling, mislabeling, distribution, misbranding, and adulteration of herbal dietary supplements which did not contain their primary ingredient.

37. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including but not limited to the following:

(a) whether Wal-mart's advertising, labeling, distribution and sale of Spring Valley dietary herbal supplements was false and violated the provisions of the Missouri Merchandising Practices Act;

(b) whether Wal-Mart was unjustly enriched by their sale of a cheap, substituted product like rice filler instead of the more expensive product labeled and advertised unjustly enriched Wal-Mart;

(c) whether Wal-Mart violated the Missouri Merchandising Practices Act by failing to inform customers, and by concealing the fact that the primary ingredient was not included within the product, and that different, unlabeled ingredients would be contained within the product;

(d) whether Wal-Mart engaged in unfair business practices in its sale and advertisement and labeling of Spring Valley dietary herbal supplements;

(e) whether Wal-Mart established best business practices for monitoring the content of its Spring Valley products, including inspection, DNA bar coding, and other practices;

(f) whether Wal-Mart adequately monitored and inspected the manufacturer of these dietary herbal supplements, and hired a reliable manufacturer of said supplements, with adequate safety protocols and safeguards;

(g) whether Wal-Mart adequately monitored the dietary herbal supplements to ensure that they did not contain allergens like nut products or byproducts, metals, and other unsafe ingredients;

(h) whether any portion of Plaintiffs' claims are preempted by the FDCA or its amendments, and other affirmative defenses raised by Wal-Mart;

(i) whether and when Wal-Mart knew that its dietary herbal supplement products were not as advertised and labeled, and the reasons why it chose to do nothing;

(j) the availability of punitive damages; and

(k) the reasons why Wal-Mart chose to substitute fillers and other contaminants in their dietary herbal supplements, and the reasons why Wal-Mart failed to recall its products after the New York Attorney General Cease and Desist Letter.

38.  All common questions are able to be resolved through the same factual occurrences as specifically and/or generally alleged herein.

39.  Plaintiffs will fairly and adequately represent the Class and protect the interests of the members of the Class.  Plaintiffs have no claims antagonistic to those of the Class.

40.  Plaintiffs retained competent and experienced counsel in complex class actions.  Counsel is committed to the vigorous prosecution of this action.

41. The prosecution of separate actions by Plaintiffs and individual members of the Class against Wal-Mart would create a risk of inconsistent or varying adjudications on the common issues of law and fact related to this action. A class action is appropriate and the superior method for the fair and efficient adjudication of this controversy.

42. The expense and burden of litigation would substantially impair the ability of the Class members to pursue individual cases to protect their rights. In the absence of a class action, Wal-Mart will retain the benefits of its wrongdoing and will continue to sell fraudulently labeled and advertised dietary herbal supplements to the public.

43. Wal-Mart has refused to act and refused to recall its mislabeled products, which applies generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate relating to the class as a whole.

44. To Plaintiffs' knowledge, there are no other Class actions in Missouri against Wal-Mart on this subject to date.

45. The interests of concentrating the action in one forum is paramount. Plaintiffs do not envision significant difficulties in managing the Class and class issues.

46. Accordingly, certification of a Class is appropriate here.

## COUNT I
(Violation of the Missouri Merchandising Practices Act)

47. Plaintiffs incorporate by reference all previous paragraphs as if fully set forth herein.

48. This action is brought, in addition to Federal Rule of Civil Procedure 23, pursuant to the class action provisions in the MMPA found in *Rev. Stat. Mo. Sec. 407.025*. Subsection 2 of that Section provides:

*Persons entitled to bring an action pursuant to subsection 1 may, if the unlawful method, act or practice has caused similar injury to numerous other persons, institute an action as representative or representatives of a class against one or more defendants as representatives of*

*a class, and the petition shall allege such facts as will show that these persons or the named defendants specifically named and served with process have been fairly chosen and adequately and fairly represent the whole class, to recover damages as provided for in subsection 1 of this section. The plaintiff shall be required to prove such allegations, unless all members of the class have entered their appearance, and it shall not be sufficient to prove such facts by the admission or admissions of the defendants who have entered their appearance. In any action brought pursuant to this section, the court may in its discretion order, in addition to damages, injunction or other equitable relief and reasonable attorney's fees.*

49. *Rev. Stat. Mo. Sec. 407.020* prohibits the use of any "deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise[1] in trade or commerce."

50. Wal-Mart made the following deceptive, fraudulent, false statements and misrepresentations regarding their dietary herbal supplements:

(a) representing on the bottle that the product contained Ginkgo Biloba, when, in fact, it did not;

(b) representing on the bottle that the product contained Korean Panax Ginseng, when, in fact, it did not;

(c) representing on the bottle that the product contained St. John's Wort, when, in fact, it did not;

(d) representing on the bottle that the product contained Echinacea, when, in fact, it did not;

(e) representing on the bottle that the product contained Garlic, when, in fact, it did not;

(f) representing on the bottle that the product contained Saw Palmetto, when, in fact, it did not;

(g) representing on the bottle that the product contained Valerian Root, when, in fact, it did not;

(h) representing on the bottle that the product contained other primary ingredients, when, in fact, they did not;

---

[1] "Merchandise" is defined in the MMPA in *Rev. Stat. Mo. Sec. 407.010(4)* to include "goods" like herbal dietary supplements.

(i) representing on the bottle that the product contained a certain number of milligrams of the primary ingredient, when, in fact, it did not;

(j) making these misstatements again on the "Supplement Facts" portion of the label;

(k) stating on the label of the Spring Valley Garlic bottles that the products contained "NO" (large letters) wheat, when in fact many of the bottles did contain wheat and wheat grass;

(l) stating on the label of the Spring Valley Ginkgo Biloba bottles that the products contained no Gluten, when, in fact, they did;

(m) stating on the Spring Valley labels that the products were "Quality Guaranteed," and that "Spring Valley products are produced under strict quality guidelines," when, in fact, they were not; and

(n) stating on the label that if customers are "unhappy" with the product, Wal-Mart "will replace it or refund your money," when, in fact, such statements were untrue, and Wal-Mart has not returned the unfair profits that they have earned on these fraudulently labeled products.

51.  Wal-Mart made the following concealments, suppressions, and omissions of material facts:

(a) Wal-Mart failed to advise that all or many of its dietary herbal supplements would not contain any of the primary ingredient advertised;

(b) Wal-mart failed to advise that when the primary ingredient was included, it would only represent a small amount of the contents of the capsule, and the rest would be filled with substitutions, adulterations, contaminants and fillers found nowhere on the label;

(c) Wal-Mart failed to disclose that its dietary herbal supplements contained substitutions, adulterations, contaminants, and fillers found nowhere on the label, including but not limited to rice, dracaena, cassava, wheat and wheat grass, eastern white pine, palm, allium, and citrus, and that often these substitutes and fillers were the only things contained within the capsules;

(d) Wal-mart failed to disclose that its dietary herbal supplements may contain wheat and wheat grass, which may interfere with those individuals who wanted a wheat-free or gluten-free diet;

(e) Wal-Mart failed to disclose that its herbal dietary supplements may contain nut products, which may be dangerous to individuals who have nut allergies; and

(f) Wal-Mart failed to disclose exactly what ingredients were in its dietary herbal supplements.

52.  An "unfair practice" is defined in Missouri state regulations, *15 CSR Sec. 60-8.020* as any practice which:

*(A) Either:*
   *(1) Offends any public policy as it has been established by the Constitution, statutes, or common law of this State, or by the Federal Trade Commission, or its interpretive decisions;*
   *(2) Is unethical, oppressive, or unscrupulous; and*

*(B) presents a risk of, or causes, substantial injury to consumers.*

53.  Wal-Mart committed an unfair practice because its actions violated public policy as it has been established by the statutes of this state, including but not limited to *Rev. Stat. Mo. Secs. 196.010 to 196.120* (Missouri's adoption of the Uniform Food, Drug & Cosmetic Act), which prohibits false advertising, misbranding, mislabeling and adulteration of food and drugs.  In addition, Wal-Mart's actions were unethical, oppressive, and unscrupulous.  Wal-Mart's actions also caused substantial injury, and presented a risk of substantial injury, to consumers in Missouri.

54.  An "unfair practice" under the MMPA is further defined in *15 CSR Sec. 60-8.040* as:

*(1) It is an unfair practice for any person in connection with the advertisement or sale of merchandise to violate the duty of good faith in solicitation, negotiation, and performance, or in any manner fail to act in good faith.*

55. Wal-Mart also committed an unfair practice by failing to act in good faith with respect to the sale, labeling and distribution of its Spring Valley dietary herbal supplements.

56. Defendant is subject to the MMPA in the sale of its dietary herbal supplements.

57. Under the MMPA, reliance upon fraudulent statements or concealments is not a required element.

58. *Rev. Stat. Mo. Sec. 407.025* allows for any person who has purchased:

*"...merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages. The court may, in its discretion, award punitive damages and may award to the prevailing party attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper.*

59. Plaintiffs, and the other members of the class, purchased the Defendant's goods primarily for personal, family, or household purposes.

60. The Plaintiffs and the members of the class suffered an appreciable loss of money or property as a result of the use or employment by Defendant of a method, act, or practice declared unlawful under *Section 407.020*, as more fully set forth above.

61. Accordingly, Defendant has violated the MMPA, and Plaintiffs and the Members of the Class are entitled to all the relief available under the MMPA.

## COUNT II
(Breach of Express Warranty)

62. Plaintiffs reincorporate all previous Paragraphs as if more fully set forth herein.

63. Wal-Mart provided Plaintiffs and the other Members of the Class with written express warranties, including warranties that its Spring Valley products included ginkgo biloba, Ginseng, garlic, St. John's wort, saw palmetto, and echinacea.

64. Wal-Mart breached these warranties by misbranding and mislabeling its products, and selling products which did not contain these ingredients. Accordingly, said products did not conform to its express warranties.

65. These breaches in warranties resulted in damages to Plaintiffs and the other Members of the Class who bought Misbranded and adulterated Spring Valley products and did not receive the goods as warranted.

66. As a direct and proximate result of the breaches of express warranties, Plaintiffs and the other Members of the Class were damaged.

## COUNT III
### (Breach of the Implied Warranty of Merchantability)

67. Plaintiff incorporates by reference all previous paragraphs as if more fully set forth herein.

68. Implied in the purchase of the misbranded Spring Valley dietary herbal supplements is the warranty that the purchased products contained their primary ingredient, are legal and can be lawfully resold.

69. Defendant knowingly and intentionally misbranded and adulterated the Spring Valley products.

70. Defendant knew or should have known that the misbranded Spring Valley products were illegal, misbranded, and adulterated, and failed to contain their primary ingredient.

71. Plaintiffs and the other Members of the Class would not have purchased products which were illegal and unsellable.

72. No reasonable customer would purchase Spring Valley products which were unsuitable for the ordinary purpose for which Plaintiffs and the Class purchased them.

73. The sold products were essentially worthless.

74. As a result, Plaintiffs and the Members of the Class were injured through their purchase of an unsuitable, useless, illegal and unsellable product.

75. As a direct and proximate result of the breach of the implied warranty of merchantability, Plaintiffs and the Class were injured.

## COUNT IV
### (Unjust Enrichment)

76. Plaintiffs incorporate by reference all preceding Paragraphs as if more fully set forth herein.

77. As a result of Defendant's unlawful and deceptive actions and concealments as more fully outlined above, the Defendants were unjustly enriched at the expense of Plaintiffs and the Members of the Class through the payment of a purchase price for a misbranded, adulterated, and worthless product.

78. Under the circumstances, it would be against equity and good conscience to allow Defendant to retain the ill-gotten benefits from Plaintiffs and the Class.

## COUNT V
### (Breach of Contract)

79. Plaintiffs incorporate all previous paragraphs as if more fully set forth herein.

80. Plaintiffs and the Members of the Class entered into contracts with Defendant whereby Plaintiffs and the Class agreed to purchase the Spring Valley herbal dietary supplements, and Wal-mart would supply them with said supplements which contained the primary ingredient listed on the label.

81. Plaintiffs and the Members of the Class fulfilled all of their obligations under the contracts by tendering the amount charged to Defendant.

82. Defendant materially breached the contracts by providing products which did not contain the primary ingredients, and which instead included substitutions, adulterations, contaminants and fillers, which were nowhere listed on the label.

83. As a direct and proximate result of the Defendant's material breach of the contracts, Plaintiffs and the Members of the Class were damaged.

## PRAYER FOR DAMAGES AND INJUNCTIVE RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all Members of the Class, pray for judgment against the Defendant, and seeks the following:

(a) for an Order certifying that this action may be maintained as a class action and appointing Plaintiffs and their counsel to represent the Class;

(b) for a declaration that Defendant's actions violated Plaintiffs' and the Class Members' rights under Missouri Law as set forth above;

(c) for all actual damages, statutory damages, penalties, and remedies available for Defendant's violations of Plaintiffs' and Class Member's rights and violations of law;

(d) for an award to Plaintiffs and the Class of their reasonable attorney's fees;

(e)  for pre-judgment interest as allowed by law;

(f) for post-judgment interest as allowed by law;

(g) for court costs and expenses as allowed by law;

(h) for a permanent injunction enjoining the Defendant from continuing to sell to the public these adulterated and substituted dietary herbal supplements;

(i) for punitive damages in an amount sufficient to punish the Defendant and deter future similar conduct; and

(j) for such other and further relief as the Court deems just and proper.

Respectfully Submitted,

**THE MEDLER LAW FIRM, LLC**

**/s/ John F. Medler, Jr.**
John F. Medler, Jr. MO Bar #38533
7700 Bonhomme Ave
Suite 360
Clayton MO 63105
(314)-727-8777 (office)
(314)-727-7001 (fax)
(314)-210-4745 (cell)
*john@medlerlawfirm.com (e-mail)*

**ENGELMEYER & PEZZANI, LLC**

by: **/s/ Timothy A. Engelmeyer**
Timothy A. Engelmeyer, #39941MO
*tim@epfirm.com*
Anthony M. Pezzani, #52900MO
*tony@epfirm.com*
13321 North Outer Forty, #300
Chesterfield, MO  63017
Phone:  636-532-9933
Fax: 314-863-7793

**THE LAW OFFICES OF RONNIE G. PENTON**
Ronnie G. Penton
209 Hoppen Place
Bogalusa, LA  70427

(985)-732-5651 (phone)
(985)-735-5579 (fax)
*Motion for admission pro hac vice pending*

*Counsel for Plaintiff Rafael Figueiredo, Dale Kardasz, and the Class*